# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MICHAEL DON ANDERSON,    )
                         )
        Plaintiff,    )
                         )
v.                       )    Case No. CIV-14-291-SPS
                         )
CAROLYN W. COLVIN,       )
Acting Commissioner of the Social )
Security Administration, )
                         )
        Defendant.    )

## OPINION AND ORDER

The claimant Michael Don Anderson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 3, 1966, and was forty-six years old at the time of the administrative hearing (Tr. 29-30, 136, 140). He has a high school education and has worked as a landscape specialist, janitor, and automobile mechanic (Tr. 31, 54, 160). The claimant alleges that he has been unable to work since February 4, 2010, due to a shoulder injury and high blood pressure (Tr. 136, 140, 159).

## Procedural History

On September 22, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 7, 2013 (Tr. 11-20). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, he could lift, carry, push, or pull up to ten pounds frequently and up to twenty pounds occasionally; sit/stand/walk six hours in an eight-hour workday; but

needed to avoid reaching overhead with his right dominant upper extremity, climbing ladders and scaffolds, and working around unprotected heights and moving mechanical parts; and could never crawl or be exposed to temperature extremes. The ALJ further found that the claimant needed to alternate between sitting and standing at intervals no longer than thirty minutes and that his time off tasks would be accommodated by normal breaks (Tr. 14). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work he could perform in the regional and national economies, *e. g.*, office helper, nuts and bolts assembler, and information clerk (Tr. 20).

## Review

The claimant contends that the ALJ erred by: (i) failing to evaluate the reliability of the VE's testimony, (ii) failing to analyze a Third Party Function Report, and (iii) failing to properly assess his credibility. The undersigned Magistrate Judge finds that the ALJ *did* err at step four of the sequential evaluation and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant's hypertension, status post right shoulder cuff tear repair, and umbilical hernia were severe impairments and that his back and hip pain were nonsevere (Tr. 13). The relevant medical evidence reveals that the claimant underwent surgery to repair a right rotator cuff tear on May 19, 2010 (Tr. 388-89). The following day, the claimant initiated a course of physical therapy for fifty-five sessions that concluded on October 4, 2010 (Tr. 262-367). At the outset of physical therapy, the claimant rated his pain as a ten on a ten-point scale and range of motion testing showed

significant limitations in shoulder abduction, external rotation, flexion, and internal rotation (Tr. 267). At the completion of physical therapy, the claimant rated his pain as a two on a ten-point scale and his range of motion was significantly improved (Tr. 362). The claimant had five post-operative appointments with Dr. Crawley, his treating physician (Tr. 373-377). During this time, the claimant reported increased pain on August 8, 2010, which Dr. Crawley believed to be a "flare-up" (Tr. 375). On September 9, 2010, Dr. Crawley found near full abduction and forward flexion, and internal rotation to T12; he opined that the claimant was "not totally disabled as he has use of his left arm, lower extremities, elbow, hand, etc." (Tr. 374). By October 7, 2010, the claimant reported occasional pain, Dr. Crawley found the claimant had full range of motion, and the claimant was released to return to his regular work duties without restrictions (Tr. 373).

Dr. Kenneth Trinidad examined the claimant in connection with a workers' compensation claim on November 24, 2010 (Tr. 395-98). Dr. Trinidad's examination of the claimant's right shoulder found tenderness over the bicipital groove, crepitance with movement, and muscle weakness in the shoulder girdle (Tr. 396). Range of motion testing revealed 140° flexion, 20° extension, 120° abduction, 50° adduction, 60° internal rotation, and 80° external rotation (Tr. 396). Dr. Trinidad recommended that the claimant undergo vocational training for a light duty job (Tr. 397).

Dr. Ronald Schatzman conducted a physical consultative examination on November 3, 2011 (Tr. 400-08). Dr. Schatzman found full range of motion in the claimant's right shoulder; however, in the claimant's left shoulder, he found limited

flexion (90°) and abduction (100°), but full range of internal and external rotation[2] (Tr. 402, 406).

State reviewing physician Dr. David Green completed a Physical Residual Functional Capacity Assessment on November 28, 2011, wherein he opined that the claimant was capable of medium work, but could balance occasionally, could frequently use his right upper extremity for overhead reaching, and needed to avoid concentrated exposure to extreme cold and heights (Tr. 409-16).

Apart from the above-mentioned consultative examinations, there is no record of medical treatment after the claimant's final post-operative follow up with Dr. Crawley in October 2010 until November 2012. On November 20, 2012, the claimant presented to Caring Hands Health Clinic (CHHC) with pain in his right shoulder and back (Tr. 458-59). The claimant could not abduct his right arm past 90° in both the anterior and lateral fields and the impression was uncontrolled high blood pressure, occasional breathlessness, and a chronic pain issue (which the provider noted he was deferring at the time) (Tr. 459). The claimant followed up at CHHC on December 4, 2012; his blood pressure remained uncontrolled and medication was adjusted (Tr. 451).

At the administrative hearing, the claimant testified that he was unable to work because of limited use of his right arm, back pain, hip pain, a hernia, high blood pressure, and medication side effects (Tr. 37, 39). He testified the rotator cuff surgery and subsequent physical therapy did not improve his right arm functioning (Tr. 38). He

---

[2] Dr. Schatzman appears to have transposed his findings regarding the claimant's shoulders since the claimant's right shoulder is the one that was injured and operated on.

further testified he had experienced back pain for nine to ten years, but had never received treatment for back pain (Tr. 40). Additionally, he stated his blood pressure remained elevated with medication and it causes him to feel weak (Tr. 39). Regarding pain, he stated he had pain in his hips, back, spine, and right shoulder everyday (Tr. 43). As to specific limitations, he testified that he could sit for fifteen minutes at a time for a total of three to four hours per day if allowed to change positions every fifteen to thirty minutes, he could stand for twenty minutes at a time, could lift and carry three pounds with his right hand, and could walk a block (Tr. 42-43).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213

(10th Cir. 2001). Here, the ALJ referenced some of Dr. Schatzman's report and mentioned the CHHC provider's findings, but provided no analysis and further failed to disclose what weight he afforded these opinions. This was particularly important here because the ALJ used Dr. Schatzman's grip strength and tactile manipulation findings to dismiss the CHHC provider's findings of limited range of motion in the claimant's shoulder, and in doing so, he ignored the fact that Dr. Schatzman also found limited range of motion in the claimant's shoulder. Additionally, the ALJ adopted Dr. Trinidad's findings concerning the claimant's umbilical hernia, but did not mention that Dr. Trinidad also found limited range of motion in the claimant's right shoulder. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating findings of Dr. Schatzman and Dr. Trinidad according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of their findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an

uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Additionally, the ALJ failed to account for the Third Party Function Report completed by the claimant's cousin. Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from nonmedical sources who have not seen a claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5-6. Here, the ALJ made no mention of the Third Party Function Report, and thus it is not clear that he considered this evidence in making his decision. "[T]he ALJ is not required to make specific findings of credibility *only* if 'the written decision reflects that the ALJ considered the testimony,'" *Blea v. Barnhart,* 466 F.3d 903, 915 (10th Cir. 2006) [citation omitted] [emphasis added], and his failure to do so here is reversible error. *See Threet v. Barnhart,* 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion ... is itself supported by substantial evidence."). *See also Baker v. Bowen,* 886 F.2d 289, 291 (10th Cir. 1989)

("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.") [citation omitted]. The omission is particularly problematic here because the Third Party Report bolsters the claimant's own testimony and reports regarding the functioning of his right arm and his pain level.

Because the ALJ failed to discuss probative evidence potentially inconsistent with his RFC determination, the undersigned Magistrate Judge finds he did not properly consider it. Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 29th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**